UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JON DONAHUE and CHARITY DONAHUE, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 2:20-cv-102 |
| AMERICAN FAMILY INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter is before the court on the Motion to Bifurcate [DE 30] and the Motion for Protective Order [DE 28] filed by the defendant, American Family Insurance Company, on March 23, 2021. For the following reasons, both Motions [DE 28 & 30] are **DENIED**.

*Background*

On February 10, 2019, the plaintiffs, Jon and Charity Donahue, discovered that the ceiling in the kitchen of their lake property home had collapsed due to a bursting pipe. Nearly 700 gallons of water per hour filled the home causing significant damage. As a result, the plaintiffs filed a claim for the loss with their home insurance company, the defendant, American Family Insurance Company. From there, a dispute arose as to what was due and owning under the policy.

On March 7, 2019, the defendant made an initial actual cash value (ACV) payment of $51,500.79 to the plaintiffs. Grant Allen, one of the defendant's agents, estimated that the dwelling's replacement cost would be an additional $87,386.48. On June 10, 2019, a construction company submitted an estimate of $181,519.21 to replace the dwelling. On July 23,

2019, a scope of work agreement was signed by both parties and contained a replacement cost value of $176,698.

In August 2019, the construction company supplemented its estimate to replace the dwelling by adding an additional $37,633.08 to the total cost. The company believed that the subfloor beneath the walls was delaminated and required removal by lifting the walls and replacing the subfloor. In October 2019, the defendant sent an independent engineer to inspect the subfloor issue and determined that those repairs were not necessary. Therefore, the defendant refused to agree to compensate the plaintiffs for the additional work.

The plaintiffs claim that Allen delayed the second ACV payment of $75,716.45 until January 2020 which precluded them from paying the construction company the initial down payment to begin the work. The defendant then refused to pay out the remaining balance of the work agreement because the plaintiffs failed to repair the property within one year of the date of loss, a requirement under the policy. The plaintiffs filed a request to extend the one-year requirement, but the request was denied. As a result, the plaintiffs filed this lawsuit against the defendant on February 7, 2020, alleging breach of contract and bad faith.

The defendant filed the instant motion requesting that the court bifurcate Count I, breach of contract, from Count II, bad faith and punitive damages, arguing that if the plaintiffs cannot prove that they were entitled to any additional payment under the insurance policy, they have no bad faith or punitive damages claims. Additionally, the defendant argues that the plaintiffs would be entitled to introduce evidence under a bad faith claim that they would not be entitled to introduce under the breach of contract claim. The plaintiffs filed their response in opposition on April 6, 2021, and the defendant replied on April 13, 2021.

Bifurcation can take one of two forms. In most cases, the same jury hears both aspects of the trial.  So if the case is bifurcated for liability and damages, the same jury would hear the damages portion of the case after finding for the plaintiff on liability. Under the second form, a separate jury would be impaneled, after a period to conduct additional discovery, if the plaintiff prevails at the first trial. Obviously, this procedure has added costs and delays.  The defendant suggested that the same jury could hear the bad faith claim after a 6-month hiatus to permit discovery on the bad faith issue.  This is impractical, so the second form of bifurcation is the only viable option based on the defendant's motion.

*Discussion*

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial." **Federal Rule of Civil Procedure 42(b)**.  The decision to bifurcate a trial under Rule 42(b) is entirely within the trial court's discretion. ***Houskins v. Sheahan***, 549 F.3d 480, 495 (7th Cir. 2008).  "Like all rules of civil procedure, this rule is applied in conjunction with Federal Rule of Civil Procedure 1, which instructs that the rules shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."  ***Toney v. Accor N. Am.***, 2010 WL 2162626, at *1 (N.D. Ind. May 27, 2010) (citation and internal quotation marks omitted).  First, the court must determine whether separate trials would avoid prejudice to a party or promote judicial economy.  ***Houseman v. U.S. Aviation Underwriters***, 171 F.3d 1117, 1121 (7th Cir. 1999).  Then it must decide whether bifurcation would prejudice the non-moving party. 171 F.3d at 1121.  Finally, bifurcation must not violate the Seventh Amendment. 171 F.3d at 1121.  The

3

moving party has the burden to demonstrate that bifurcation would support judicial economy and not prejudice any parties. *Toney*, 2010 WL 2162626 at *1 (citations omitted).

The defendant has argued that consolidating the breach of contract and bad faith and punitive damages claims would prejudice it. First, the defendant claims that courts have bifurcated insurance disputes such that the alleged bad faith portion of the case, including discovery, does not proceed unless there is first a finding of coverage. The defendant cites the Seventh Circuit's affirmation of a Northern District of Indiana court's finding that in order "to prove that an insurance company committed the tort of bad faith in Indiana, a plaintiff must establish that his claim was underpaid or wrongfully denied in the first place." *Foster v. State Farm Fire and Casualty Company*, 211 WL 3610425, at *18 (N.D. Ind. Aug. 17, 2011); *aff'd*, 674 F.3d 663 (7th Cir. 2012). The defendant also relies on the Indiana Supreme Court's finding that "as a policy matter, it will often be appropriate for bad faith claims to be tried separately from liability claims." *State Farm Mutual Insurance Company v. Gutierrez*, 866 N.E.2d 747, 751-52 (Ind. 2007)

The defendant's application of these decisions is incorrect. While it is true that the plaintiffs must establish that the defendant breached the contract in order to prove bad faith, it is not necessary that it be accomplished through two separate trials. Additionally, bifurcation is a procedural issue, and a federal court is not bound by the procedural rulings of the state courts. *See* **Hanna v. Plumer**, 380 U.S. 460, 465 (1965); **Hahn v. Walsh**, 762 F.3d 617, 629 (7th Cir. 2014).

The court understands the defendant's position that the jury may be sympathetic towards the plaintiffs based upon the comparative wealth of the parties, but the court can provide warnings, limiting instructions, or special verdict forms to temper any prejudice. *See* **Stachon v.**

*Woodward*, 2015 WL 7963144, at *2 (N.D. Ind. Dec. 2, 2015) (citation omitted).  Clarification in the jury instructions also will take care of the differing standards of proof between the two claims.  Additionally, the plaintiffs will not be permitted to put on evidence of the defendant's net worth unless the court determines there is sufficient evidence for a reasonable jury to find that there was bad faith.  If the evidence is insufficient, evidence of the defendant's net worth will not be permitted.

Next, the defendant argues that bifurcation is necessary because the plaintiffs have served discovery requests seeking information that is irrelevant to the breach of contract claim but that may be relevant to the bad faith claim.  Further, the defendant argues that the plaintiffs have requested opinion work product that would directly affect its ability to defend against the breach of contract claim.  Therefore, the defendant claims that the plaintiffs would not be prejudiced by bifurcation because they would have an opportunity to present a bad faith claim in the second trial if they first prevail on the underlying contract claim.

The plaintiffs argue that bifurcating the two counts, and the two separate trials it would cause, would be unfair and create undue delay.  The plaintiffs claim that both trials would have the same fact witnesses, same experts, same exhibits, and deal with generally the same issues.  The plaintiffs also state that they would be prejudiced by the bifurcation due to the additional attorney fees and costs that two trials would require as well as the additional time to get this case resolved.  Lastly, the plaintiffs argue that separating the breach of contract claim from the bad faith claim would violate the Seventh Amendment because the jury would pass on the same essential questions as to both counts, and that invites error.

As explained above, the plaintiffs have filed a breach of contract claim and a bad faith claim against the defendant.  The defendant filed its answer and twenty affirmative defenses on

April 7, 2020.  Affirmative defense eight states that "[t]he [p]laintiffs failed to comply with all conditions precedent to the coverage under the policy of insurance, both prior to the loss and after the loss"; affirmative defense nine states that [t]he [p]laintiffs' claim is barred and/or excluded by the specific terms and conditions of the policy insurance"; and affirmative defense fifteen states that "[t]he [p]laintiffs claim may be barred in whole or in part to the extent that [the] [p]laintiffs have failed to mitigate, minimize, or avoid damages they allegedly sustained." (DE 14 at 13-14). Throughout its pleadings, the defendant has maintained that the plaintiffs violated the condition in the policy agreement that required them to make repairs to their damaged property within one year of the date of loss.  Therefore, the defendant argues that it is relieved from liability as to the breach of contract claim. At the same time, the plaintiffs have argued that but for the defendant's bad faith in processing the second ACV payment, the repairs could have been completed on time.  Additionally, the plaintiffs argue that the defendant refused to extend the one-year requirement in bad faith.

    Since the defendant has raised the one-year requirement of the insurance policy as a defense to the breach of contract claim, the plaintiffs' counter-argument that the defendant stalled the second ACV payment and refused an extension in bad faith makes evidence of bad faith relevant to the breach of contract claim.  Again, the court understands the defendant's concern of a jury being overly sympathetic in case such as this one.  However, the defendant has made the bad faith issue relevant by raising the affirmative defenses.

    In conjunction with the Motion to Bifurcate, the defendant filed a Motion for Protective Order on March 23, 2021.  The defendant requests that the court stay all further discovery relating to the bad faith claim, Count II, until a final judgement as to the breach of contract claim, Count I, has been made. Also, pursuant to **Federal Rule of Civil Procedure 26(c)**, the

defendant requests that its responses to requests for admissions 1-3; answers to interrogatories 8, 12, and 22-25; requests for production 13 and 21-25; and any other discovery relating to other claims, vacations, and/or employment file not be had until liability as to Count I has been established.

Since the defendant's Motion to Bifurcate has been denied, the defendant's request to stay all discovery relating to Count II until a final judgment is reached as to Count I is moot. Looking specifically to the three challenged requests for admission, the plaintiffs have requested admissions as to the defendant's total assets, net income, and reported revenues in 2019. This information is relevant to the bad faith claim, and the plaintiffs are entitled to it.

Next, the defendant argues that the challenged interrogatories and requests for production, regarding the its claim handling procedures generally and as to how the plaintiffs' claim was handled, are not relevant, are trade secrets, and are work product or privileged material. First, the defendant's procedures for handling claims that its policy holders file are relevant as the basis of this lawsuit involves an insurance claim for damages to the plaintiffs' home. This includes how the defendant has handled similar claims in the past as well as requests for an extension of the one-year provision in the policy.

Second, the defendant's argument that its claim handling procedures are trade secrets and therefore not discoverable also fails. To support its argument, the defendant points to one Seventh Circuit case, and numerous non-binding cases, that ruled that "a settlement agreement is a contract, and when parties to a contract ask a court to interpret and enforce their agreement, the contract enters the record of the case and thus becomes available to the public, unless it contains information such as trade secrets that may legitimately be kept confidential." ***Herrnreiter v. Chicago Housing Authority***, 281 F.3d 634, 636 (7th Cir. 2002). The defendant's interpretation

of these cases is wrong. While trade secret information may be kept confidential from the public, if it is relevant to the pending case, it is not to be kept confidential from the parties involved. *See* **Union Oil Co. of California v. Leavell**, 220 F.3d 562, 568 (7th Cir. 2000) ("[W]e have insisted that only genuine trade secrets … may be held in long-term confidence. Portions of discovery may be conducted in private to expedite disclosure. Much of what passes between the parties remains out of public sight because discovery materials are not filed with the court"); **Goesel v. Boley Intern. (H.K.) Ltd.**, 738 F.3d 831, 833 (7th Cir. 2013). The defendant can ensure that its trade secret information is not disclosed to the public by requesting the court to seal documents containing it, but the defendant is not entitled to refrain from disclosing claim handling procedures because it is relevant to the issues in this case. **Union Oil Co. of California**, 220 F.3d at 568.

Lastly, the plaintiffs stated that if defense counsel abided by N.D. Ind. L.R. 37-1, which the court found that the defendant had in its April 9, 2021 Order [DE 39], counsel for both sides "could have easily fashioned a narrowly tailored protective order for use of the materials in this action only." The court believes that this shows the plaintiffs' willingness to meet and confer regarding any potential trade secret information and ensure that only relevant information is obtained and kept confidential from the public.

One final issue that the court finds necessary to address is the defendant's concern regarding potential attorney-client privileged information. The defendant claims that "since [the] [d]efendant's representatives sought the advice of counsel before deciding whether to extend the one-year limitation, such discovery is also anticipated to explore that privileged attorney-client information." The defendant also states that it has already produced all of its non-privileged claim file materials, answered interrogatories and requests for production, and provided the

8

depositions of Grant Allen and expert engineer, Dana Lehman. In their response, the plaintiffs have not indicated whether specific information that they have sought has been wrongfully withheld. Asking the court to address a potential issue of whether certain documents contain privileged material is premature. If any discovery disputes arise regarding such, the court can address it at that time.

Based on the foregoing reasons, the Motion to Bifurcate [DE 30] and the Motion for Protective Order [DE 28] are **DENIED**.

ENTERED this 2nd day of June, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge